IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| VERN E. McGINNIS, JR., | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No. 15-398 |
| v. | ) Chief Judge Joy Flowers Conti/ |
| | ) Chief Magistrate Judge Maureen P. Kelly |
| | ) |
| MARK HAMMER, *Physician's Assistant;* | ) |
| CHCA STEPHANIE WOOD; | ) |
| SUPERINTENDANT MARK CAPOZZA; | ) Re: ECF Nos. 125 and 132 |
| CARROL SCIRE, *Superintendant's* | ) |
| *Assistant/Grievance Coordinator;* | ) |
| *Individually and in their official capacities;* | ) |
| and CORRECT CARE SOLUTIONS, LLC, | ) |
| | ) |
| Defendants. | ) |

## REPORT AND RECOMMENDATION

### I.     RECOMMENDATION

Presently pending before the Court are two Motions to Dismiss the Third Amended Complaint: one filed by Defendants Stephanie Wood, Mark Capozza, and Carrol Scire, ECF No. 125, and the other filed by Defendants Correct Care Solutions, Inc. and Mark Hammer, ECF No. 132. For the following reasons, it is respectfully recommended that the Motions to Dismiss be granted and the case be dismissed with prejudice.

### II.    REPORT

#### A.     FACTUAL BACKGROUND

Plaintiff is an inmate at the State Correctional Institution at Forest, Pennsylvania and a former inmate at the State Correctional Institution at Pittsburgh ("SCI Pittsburgh"). On January

1

11, 2017, he filed his Third Amended Complaint, ECF No. 121, which is currently the operative pleading in this case. Therein, he alleges the following.

In late 2014, while incarcerated at SCI Pittsburgh, Plaintiff experienced a severe pain in his left knee and lower back after jogging a few miles. Id. ¶ 10. Plaintiff immediately signed up for sick call and was seen by Defendant Mark Hammer ("Hammer"), a Physician's Assistant ("PA"), on December 29, 2014. Id. During this visit, Plaintiff explained his history of knee problems to Hammer. Id. Specifically, Plaintiff explained that he had sustained "an old weightlifting/running injury to his left knee" approximately fifteen years prior, which had produced "severe burning/pain" in his knee. Id. After immediately stopping his exercise, Plaintiff felt "intense pain for about 15 minutes." Id. Thereafter, Plaintiff had no further problems until the Spring of 2013. Id. At that time, Plaintiff "would jog once or twice a week and would experience a slight limp for 2 or 3 days." Id. These episodes "did not happen often." Id. Following the episode in late December 2014, however, Plaintiff had experienced "severe burning and constant pain" as well as a limp. Id. In addition, he knee had "started to buckle inwards . . . ." Id.

After relaying the foregoing information to Hammer, Plaintiff was prescribed 600 mg of Ibuprofen, to be taken three times daily for the next couple months. Id. ¶ 10. Plaintiff claims that he explained to Hammer, "I don't want to get permanently injured or crippled, could I please get this checked or fixed?" Id. Plaintiff also stated that the burning and pain was on the right side of his left knee. Id. Hammer advised Plaintiff that the area he was describing involved his "MCL" (i.e., the medial collateral ligament) and Plaintiff should "use common sense, if it hurts, don't do it." Id. According to Plaintiff, Hammer never touched him or examined him, and instead merely "pulled his diagnosis out of thin air." Id. Hammer did not refer Plaintiff to a

2

doctor, did not order x-rays or an M.R.I., and did not prescribe ameliorative measures such as crutches, a knee brace, "or even an ace wrap." Id.

Unsatisfied with Hammer's course of action, Plaintiff attempted to informally resolve his medical complaint pursuant to DOC policy by submitting an "Inmate's Request to Staff Member" (hereafter, "request slip") to Corrections Health Care Administrator Stephanie Wood ("Wood") on January 4, 2015. Id. ¶ 19; ECF No. 121-7. In his request slip, Plaintiff advised Wood of his ongoing knee pain and requested an MRI. Plaintiff did not hear back from Wood within the allotted five-day response period. Id.

On January 12, 2015, a preacher and family friend by the name of Bill Fish visited Plaintiff. ECF No. 121 ¶ 14. After seeing Plaintiff limp, Mr. Fish became concerned about Plaintiff's condition. Id. The following morning, at Plaintiff's request, Mr. Fish attempted to contact Superintendent Mark Capozza ("Capozza"). Id. Mr. Fish spoke with Capozza's "assistant," an unidentified individual whom Plaintiff assumes to be Defendant Carroll Scire ("Scire"). After relaying his concerns to Capozza's assistant, Mr. Fish was advised that Plaintiff would have to file a grievance. Id.

The following morning, as Plaintiff was returning from his job in the prison, he noticed Capozza in the officer's booth at the door of his block. Id. ¶ 15. According to Plaintiff, Capozza "watch[ed] [him] limp past" but "never said a word" and merely "turned a blind eye." Id.

Later that day, Plaintiff's knee buckled inward and he fell on some stairs. Id. ¶ 16. Following this incident, Plaintiff was placed in a wheelchair and taken to the medical department. Id. There, Plaintiff was seen by a nurse who examined his knee, gave him some crutches and an ace wrap, and informed him that he would be summoned to sick call in two or

three days. Id. ¶ 17. During this visit, Plaintiff learned that Hammer had listed his condition in the medical chart as a "knee sprain." Id.

That same day, January 13, 2015, Plaintiff filed a grievance against Hammer, Wood, and Capozza on the grounds that he was being denied necessary medical treatment. Id. ¶ 18; ECF No. 121-7. According to Plaintiff, Scire – who is the prison's grievance coordinator as well as Capozza's assistant – assigned Wood, "the head of the medical [department]," ECF No. 121 ¶ 20, to be the grievance officer that would investigate Plaintiff's complaints, even though Wood was herself the subject of Plaintiff's grievance. Id. ¶¶ 18, 20-21. In this way, Plaintiff avers, Scire and Wood conspired together, in violation of D.O.C. policy, and collectively turned a "blind eye" to Plaintiff's ongoing knee problem. Id. ¶ 21; see also id. ¶ 22.

On January 16, 2015, Plaintiff was examined in sick call by Physician's Assistant Meredith George ("George"). Id. ¶ 23. After lifting Plaintiff's lower leg up and down several times, George concluded that Plaintiff had ligament damage. Id. Plaintiff requested an MRI, to which George allegedly responded, "[I]t does not work like that, if the medical [department] fixed everyone in prison, the state would be bankrupt." Id. George provided properly sized crutches to Plaintiff, ordered x-rays for both of his knees, and informed him that he would be receiving physical therapy. Id.

Around this same time, Plaintiff's mother, a registered nurse, spoke with Wood about Plaintiff's condition. Id. ¶ 24. According to Plaintiff, his mother "was asking [Wood] simple medical questions about why I wasn't being treated." Id. Wood allegedly responded that she "[didn't] like being spoke to like that." Id. Plaintiff's aunt, who is also a nurse, similarly spoke with Wood. Id. ¶ 25. Based on these conversations, Plaintiff claims that Wood had personal knowledge about his condition "but never did anything about it." Id.

4

On January 17, 2015, Plaintiff sent a request slip to Dr. Mollura, the prison's Medical Director, seeking help in addressing his injured knee. Id. ¶ 28; ECF No. 121-3. Dr. Mollura did not respond to Plaintiff's request. Id. ¶ 28.

On February 3, 2015, Plaintiff sent a request slip to Scire, seeking a response to his January 13, 2015 grievance. ECF No. 121-10. Scire responded to the request slip two days later, indicating she would mail a copy of the grievance response once she received it. Id. On February 8, 2015, Plaintiff submitted a second request to Scire seeking a response to his grievance. ECF No. 121-11. Scire directed Plaintiff to "write to Deputy Woods." Id.

After signing up for sick call on February 11, 2015, Plaintiff was seen once again by PA Hammer on February 16, 2015. ECF No. 121 ¶ 27; ECF No. 121-2. At that time, Plaintiff complained that he could not walk and his left knee was getting worse. ECF No. 121 ¶ 27. After examining Plaintiff, Hammer ordered a hinged knee brace and instructed Plaintiff to do leg-strengthening exercises. Id. Plaintiff replied that he could not walk and would not do any exercises until his knees were fixed. Id. Hammer told Plaintiff that the ligaments in his left knee were "laxed" and told him again that he should do strengthening exercises. Id. When Plaintiff asked how Hammer could make this conclusion without an MRI, Hammer allegedly told him, "You will not get an M.R.I., and fixing your knee is an elective procedure." Id. Plaintiff claims that, at that point, he put his crutches down, took a step, almost fell down, and "asked how this is an elective procedure?" Id. Hammer allegedly replied, "[T]hey do not have to make you a world class athlete," and accused Plaintiff of "[f]aking." Id. Plaintiff then informed Hammer that the Motrin was not alleviating his pain. Id. According to Plaintiff, Hammer canceled the Motrin without prescribing any other pain medication. Id. Plaintiff claims this was done in "retaliation" for his having filed a prison grievance. Id.

5

The next day, February 12, 2015, Wood provided the following response to Plaintiff's grievance:

> I did review your medical file and speaking with the Medical Director Dr. Mollura you were seen 12-29-2014 by Mr. Hammer PA-C for left knee pain after jogging in the yard. Medications were ordered and you were instructed to not run until you feel better. You were seen follow up clinic on 1-16-2015 by Ms. George PA-C for the knee pain and medications were ordered, X-rays of left knee and Physical therapy was ordered for strengthening exercises you [sic] were given a knee sleeve and given crutches. You are receiving the community standards of medical care.

ECF No. 121-9. Plaintiff filed an appeal of his grievance denial that same day. ECF No. 121-12.

On February 18, 2015, Plaintiff spoke to Capozza "face to face" while at work. ECF No. 121 ¶ 28. Plaintiff claims that, "while on crutches in front of him I explained my situation to him." Id. The next day Plaintiff sent a request slip to Capozza seeking help in "get[ting] his knee fixed . . . ." Id.; ECF No. 121-4. In response, Capozza referred the matter to Wood for her review. Id.

On February 28, 2015, Plaintiff submitted separate request slips to Wood and Dr. Mollura. ECF No. 121 ¶ 28; ECF Nos. 121-5 and 121-6. In both requests, Plaintiff asked to see a doctor in order to get a second opinion on his injury. He also sought MRIs and a consult with an orthopedic specialist. Id. Plaintiff noted in his request slips that his Motrin prescription had been cancelled by Hammer, and he had run out of the medication three days prior. Id. Neither Wood nor Dr. Mollura submitted a response to Plaintiff's requests.

Nevertheless, in response to his request for a sick call, Plaintiff was seen by PA George on or about March 5, 2015. ECF No. 121 ¶ 27. Upon informing George that he had not had pain medication since February 25, 2015, Plaintiff was prescribed 500 mg of Naproxen to be taken 1-2 times daily. Id. According to Plaintiff, this dosage was "less than what [he] was getting with the [M]otrin" and did not alleviate his pain. Id.

6

Four days later, on March 9, 2015, Capozza issued a denial of Plaintiff's appeal from his January 13, 2015 grievance. ECF No. 121-15. Plaintiff then took a final appeal to the Office of Inmate Grievance & Appeals, which issued an adverse ruling on May 11, 2015, finding "[n]o evidence of neglect or deliberate indifference." ECF No. 121-17.

Meanwhile, in March 2015, Plaintiff commenced this civil action. ECF No. 1. Following a hearing on June 9, 2015 relative to Plaintiff's motion for a preliminary injunction and temporary restraining order, this Court ordered Defendants to schedule an MRI of Plaintiff's left knee and have the knee evaluated by an orthopedic physician. ECF No. 17.

According to the Third Amended Complaint, an MRI was completed on June 24, 2015, and a board-certified orthopedic surgeon examined Plaintiff on July 9, 2015. ECF No. 121 ¶ 30. The surgeon diagnosed tendonitis of the abductor muscle. Id. He did not recommend surgery. Id.

Thereafter, Plaintiff decided to rehabilitate his knee on his own. ECF No. 121 ¶ 32. On August 4, 2015, he saw a physical therapist in prison, at which time he turned in his crutches, demanded a cane, and asked to be cleared to lift weights. Id. Plaintiff subsequently resumed weight lifting and, by November 2015, his knee had healed to the point where he could walk normally. Id. ¶ 33.

In late November 2015, however, Plaintiff experienced pain and swelling in his lower abdomen. Id. ¶ 34. Plaintiff assumed he had pulled a groin muscle and did not seek treatment until the following April, when he submitted a request slip to PA George. Id. ¶¶ 34-35; ECF No. 121-19.

George advised Plaintiff to sign up for sick call, which he did on May 30, 2016. ECF No. 121 ¶ 36. Plaintiff was seen by George two days later, at which time she determined that

Plaintiff had a hernia. Id. According to Plaintiff, George felt that he was "borderline for surgery" and expressed concern that the hernia was located up against his groin. Id. George explained that surgery would only be performed "if it won't go back in" and interfered with circulation or if it went "further south into [Plaintiff's] testicles." Id. She issued Plaintiff a small hernia belt and told him to "keep an eye on it." Id.

On June 17, 2016, Plaintiff sought an "additional and/or special injunction" directing the Defendants to send Plaintiff to an outside hospital for immediate surgery to repair his hernia. ECF No. 90. This Court denied Plaintiff's motion by Order dated June 30, 2016 on the grounds that Plaintiff had not satisfied the demanding standard for relief under Federal Rule of Civil Procedure 65. ECF No. 98.

On October 31, 2016, Plaintiff put in a request for sick call based on his perception that the hernia had gotten worse and was now located against his right testicle. ECF No. 121 ¶ 42. He was seen by a "Dr. Kennedy" on November 3, 2016. Id. ¶ 43. Dr. Kennedy expressed concern over the location of the hernia. Id. She explained that she was new to the institution but would confer with PA George to find out what she could do. Id.

On November 16, 2016, Plaintiff had a teleconference with Dr. Kennedy and an outside surgeon. Id. ¶ 44. Plaintiff claims that, after viewing the hernia and speaking with Plaintiff via teleconference, the surgeon advised that Plaintiff would be temporarily transferred to "the prison in Somerset" and taken to a local hospital there for surgery. Id.

Since that visit, Plaintiff states that he has not seen Dr. Kennedy, and "it is rummored [sic] she quit sometime in December." Id. ¶ 45. Plaintiff claims he was told by "staff & inmates" that "they will not let her do anything here & she did not want to risk her medical liscence [sic] [because] they will not help anyone or do thier [sic] jobs here." Id.

8

As of filing of the Third Amended Complaint, Plaintiff had not spoken to the surgeon and felt it was "unclear if other staff has cancelled the surgery in [retaliation], or if it was delayed due to the holidays." ECF No. 121 ¶ 46. Plaintiff therefore intended, in the "near future," to send a request notice to Wood and the prison's deputy superintendent to check the status of his surgery. Id.[1]

## B. PROCEDURAL BACKGROUND

Plaintiff initiated this litigation on March 24, 2015 with the filing of his application for leave to proceed in forma pauperis. ECF No. 1. After that motion was granted, ECF No. 2, Plaintiff's Complaint was filed on April 13, 2015. ECF No. 3. As originally styled, the Complaint asserted claims against Hammer, Wood, "Health Care Provider M.H.M.," and Capozza for declaratory and injunctive relief and for damages to redress the alleged violation of Plaintiff's Eighth Amendment rights.

Capozza and Wood filed a motion to dismiss the Complaint on July 6, 2015. ECF No. 27. In so moving, the Defendants argued that: (a) Plaintiff had failed to adequately allege their personal involvement in the alleged wrongdoing; and (b) Wood, a non-medical defendant, could not be liable under an Eighth Amendment theory in view of the fact that, at all relevant times, Plaintiff was under the care of medical professionals. ECF No. 28.

Thereafter, Plaintiff filed a "Motion to Correct and to Change Defendants and Address," ECF No. 36, which was granted on July 22, 2015. ECF No. 37. Pursuant to the Court's order, Defendant Health Care Provider M.H.M. was terminated and Correct Care Solutions, LLC

---

[1] As discussed herein at n. 7, *infra,* the record reflects that Plaintiff underwent surgery for his hernia on March 3, 2017.

9

("CCS") was substituted as a defendant in the case. Id. Plaintiff also sought leave to amend his Complaint, ECF No. 52, and leave was granted on October 5, 2015. ECF No. 53.

On November 16, 2015, Plaintiff filed his Amended Complaint, naming Hammer, Wood, Capozza, Scire, and CCS as defendants. ECF No. 59. Plaintiff again sought declaratory and injunctive relief, along with damages for the alleged violation of his Eighth Amendment rights. Id. Hammer filed his answer to the Amended Complaint on December 8, 2015, ECF No. 66, and CCS filed a motion to dismiss the following day. ECF No. 67. Capozza, Scire and Wood (collectively, "the DOC Defendants") filed a motion to dismiss the Amended Complaint on December 29, 2015. ECF No. 74. After responding to these motions, ECF Nos. 80, 81, 82, 83, Plaintiff again sought leave to amend his pleading. ECF No. 94.

The Court granted leave, ECF No. 97, and Plaintiff's Second Amended Complaint was filed on July 20, 2016. ECF No. 100. Like his previous pleading, Plaintiff's Second Amended Complaint asserted claims for declaratory and injunctive relief and sought compensatory and punitive damages for Eighth Amendment violations allegedly committed by Hammer, CCS, Wood, Capozza, and Scire. Id. The DOC Defendants filed a motion to dismiss the Second Amended Complaint on August 3, 2016, ECF No. 102, and Hammer and CCS (collectively, "the Medical Defendants") filed a motion to dismiss on August 15, 2016. ECF No. 108. After Plaintiff filed his responses, ECF Nos. 111, 112, 113, 114, the Court issued a Report and Recommendation that the Defendants' motions be granted. ECF No. 119.

In the Report and Recommendation, this Court opined that the claims against the DOC Defendants should be dismissed because Plaintiff's averments failed to show the Defendants' personal involvement in the alleged wrongdoing. Id. at 7-8. The Court further concluded that "[a] non-medical defendant like Defendant Wood cannot be considered to be deliberately

indifferent for failing to respond to medical complaints of a prisoner who was already being medically treated." Id. at 8 (citing Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993)). With regard to the Medical Defendants, this Court opined that Plaintiff's allegations indicated a disagreement with his course of treatment, but they did not state a plausible claim for deliberate indifference on the part of Hammer to Plaintiff's serious medical needs. Id. at 9. The Court further concluded that Plaintiff had failed to identify any policy, practice, or custom for which CCS could properly be held liable relative to the alleged constitutional violation. Id. at 10.

On January 6, 2017, Plaintiff filed his objections to the Court's Report and Recommendation. ECF No. 120. Five days later, without first seeking leave to do so, Plaintiff filed the Third Amended Complaint. ECF No. 121. Despite the fact that the Third Amended Complaint had been filed in violation of Rule 15(a)(2), this Court permitted the amendment and allowed the pleading to stand. Accordingly, Plaintiff's Third Amended Complaint remains the operative pleading in this case. In light of the pendency of the Third Amended Complaint, this Court withdrew its prior Report and Recommendation on January 30, 2017 and denied the Defendants' Rule 12(b)(6) motions as moot. ECF No. 124.

That same day, the DOC Defendants filed their motion to dismiss the Third Amended Complaint, along with a supporting brief. ECF Nos. 125 and 126. The Medical Defendants subsequently filed their motion to dismiss and supporting brief on February 20, 2017. ECF Nos. 132 and 133. Plaintiff filed a response and brief in opposition on April 18, 2017. ECF Nos. 140, 141.[2] In view of these submissions, the issues have been sufficiently joined and Defendants' motions are ripe for adjudication.

---

[2] Plaintiff has also filed two "declarations" in opposition to the pending motions. ECF Nos. 139 and 143. For the reasons discussed herein, it is recommended that the declarations be disregarded and that the instant motions be adjudicated pursuant to Federal Rule of Civil Procedure 12(b)(6) rather than Rule 56.

## C.    STANDARD OF REVIEW

As the United States Supreme Court explained in <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007), a complaint may properly be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) if it does not alleged "enough facts to state a claim to relief that is plausible on its face." <u>Id.</u> at 570. In assessing the merits of a claim subject to a motion to dismiss, a court must accept all alleged facts as true and draw all inferences gleaned therefrom in the light most favorable to the non-moving party. <u>Phillips v. County of Allegheny</u>, 515 F.3d 224, 228 (3d Cir. 2008)(citing <u>Worldcom, Inc. v. Graphnet, Inc.</u>, 343 F.3d 651, 653 (3d Cir. 2003)). A pleading party need not establish the elements of a *prima facie* case at this stage; the party must only "put forth allegations that 'raise a reasonable expectation that discovery will reveal evidence of the necessary element[s].'" <u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 213 (3d Cir. 2009)(quoting <u>Graff v. Subbiah Cardiology Assocs., Ltd.</u>, Civ. A. No. 08-207, 2008 WL 2312671 (W.D. Pa. June 4, 2008)).[3]

*Pro se* pleadings are held to "less stringent standards than formal pleadings drafted by lawyers...." <u>Haines v. Kerner</u>, 404 U.S. 519, 520 (1972); <u>United States ex rel. Montgomery v.</u>

---

[3] For purposes of a Rule 12(b)(6) analysis, courts generally do not consider matters outside the pleadings, except for: (i) exhibits that are attached to the complaint, (ii) matters of public record, and (iii) any undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document. <u>In re Burlington Coat Factory Sec. Litig.</u>, 114 F.3d 1410, 1426 (3d Cir. 1997); <u>Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.</u>, 998 F.2d 1192, 1196 (3d Cir. 1993). "If, on a motion under Rule 12(b)(6) ..., matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). Here, Plaintiff has appended numerous exhibits to his Third Amended Complaint, which this Court has considered for purposes of the analysis set forth in this Report and Recommendation.

Following the filing of Defendants' pending motions, Plaintiff submitted two separate "declarations" – one on April 6, 2017 and the other on July 13, 2017. ECF Nos. 139 and 143. Based on its review of these materials, this Court respectfully recommends that the Defendants' pending motions be treated as motions to dismiss the Third Amended Complaint under 12(b)(6) rather than being converted into motions for summary judgment. Consistent with this recommendation, this Court has disregarded the contents of Plaintiff's declarations for purposes of its Rule 12(b)(6) analysis, except to the limited extent that the declarations may shed light on whether further amendment of Plaintiff's pleading might cure the defects otherwise identified herein. As explained further in note 7, *infra,* this Court finds nothing in the declarations that suggests his Eighth Amendment claims could be saved upon further amendment.

12

Brierley, 414 F.2d 552, 555 (3d Cir. 1969) (petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance.")(internal quotation marks and citation omitted).

**D.   DISCUSSION**

Plaintiff's Third Amended Complaint, like his prior pleadings, is predicated on an alleged violation of his Eighth Amendment rights.   For this alleged constitutional injury, he seeks declaratory, injunctive, compensatory, and punitive relief against Hammer, Wood, Capozza, Scire, and CCS.

Plaintiff's claims against the Defendants are asserted under 42 U.S.C. § 1983, which provides a private right of redress against "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws . . . ." In order to state a claim under § 1983, a plaintiff must plead two essential elements:   1) that the conduct complained of was committed by a person acting under color of state law, and 2) that said conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States.   Natale v. Camden County Corr. Facility, 318 F.3d 575, 580-81 (3d Cir. 2003); Flasher v. Smith, Civ. A. No. 17-1080, 2017 WL 2834463, at *2 (M.D. Pa. June 30, 2017).   Here, Plaintiff asserts that the Defendants, acting under color of state law, subjected him to cruel and unusual punishment in violation of his Eighth Amendment rights by failing to render constitutionally adequate medical care.

To demonstrate an Eighth Amendment violation in the context of this case, Plaintiff must allege facts showing the Defendants were "deliberately indifferent" to a "serious medical need."

13

Estelle v. Gamble, 429 U.S. 97, 104, 106 (1976). "The question under the Eighth Amendment is whether prison officials, acting with deliberate indifference, exposed a prisoner to a sufficiently substantial 'risk of serious damage to his future health....'" Farmer v. Brennan, 511 U.S. 825, 843 (1994) (quoting Helling v. McKinney, 509 U.S. 25, 35 (1993)).

A plaintiff may meet the pleading burden by alleging facts to establish that the defendants intentionally denied or delayed medical care. Giles v. Kearney, 571 F.3d 318, 330 (3d Cir. 2009). Deliberate indifference requires that a defendant "'knows of and disregards an excessive risk to an inmate's health or safety.'" Dominguez v. Governor of Pa., 574 F. App'x 63, 65-66 (3d Cir. 2014) (quoting Natale, 318 F.3d at 582). Under this standard, however, "prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk...." Farmer, 511 U.S. at 844.

### 1. The Medical Defendants

#### a. Defendant Hammer

Plaintiff's claim against Hammer appears to be predicated primarily, if not exclusively, on the events that transpired during the first visit on December 29, 2014. In his Third Amended Complaint, Plaintiff asserts that Hammer "never touched [him]" or examined him, and instead "pulled his diagnosis out of thin air[,] stating it was my MCL." ECF No. 121 ¶ 47. Plaintiff objects that Hammer never referred him to a doctor, never ordered x-rays or an MRI, and did not provide crutches, a knee brace, "or even a[n] ace wrap." Id.

Although Hammer is alleged to be an employee of CCS - a private entity, id. ¶¶ 6, 8, he is subject to possible liability under § 1983 by virtue of the fact that he provided medical care to inmates at SCI-Pittsburgh pursuant to his employer's contract with the prison. See West v. Atkins, 487 U.S. 42, 55–56 (1988) (holding that a physician under contract with the state to

14

provide medical services to inmates is acting under color of state law for purposes of § 1983 when undertaking his duties in treating an inmate); Johnson v. Stempler, 373 F. App'x 151, 152 n.1 (3d Cir. 2010) ("[P]rivate prison doctors working under contract with the government act 'under color of state law' for purposes of § 1983.").

The Medical Defendants do not contest Hammer's status as a state actor for purposes of this lawsuit, but they do deny that an Eighth Amendment violation has been pled. In particular, they contend that Plaintiff has not alleged facts showing that Hammer was deliberately indifferent to a serious medical need. They deny that Hammer was subjectively aware of, and disregarded, a substantial risk of serious harm to Plaintiff's health or safety.

In this Court's view, the Medical Defendants' position has merit. Under Third Circuit law, deliberate indifference may be inferred when a prison official knows of a prisoner's need for medical treatment but intentionally fails to provide it; delays necessary medical treatment for a non-medical reason, or prevents a prisoner from receiving medical treatment that was needed or recommended. Foye v. Wexford Health Sources Inc., 675 F. App'x 210, 215 (3d Cir. 2017) (citing Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999)). No such conduct is alleged here.

In this case, Plaintiff was seen by Hammer on two occasions. On December 19, 2014, after taking Plaintiff's subjective history of his injury, Hammer diagnosed Plaintiff's knee problem as MCL-related, prescribed 600 mg of Ibuprofen to be taken three times a day, and advised Plaintiff to avoid activities that cause pain. On February 11, 2015, Plaintiff presented to Hammer again - this time with complaints that his knee was getting worse. Upon examining Plaintiff's knee, Hammer informed Plaintiff that he had "laxed" ligaments. Hammer ordered Plaintiff a hinged knee brace and instructed him to do leg strengthening exercises. When

15

Plaintiff informed Hammer that the Ibuprofen had not been effective, Hammer canceled it without ordering alternative pain medication.

Based on the allegations in the Third Amended Complaint, this Court is of the view that Hammer provided Plaintiff a constitutionally adequate course of treatment, albeit one that was more conservative than Plaintiff desired. Plaintiff complains that Hammer did not physically examine his knee during his initial visit and "pulled his diagnosis out of thin air," ECF No. 141 at 3, but it is clear from the Third Amended Complaint that Hammer's assessment was based on Plaintiff's subjective account of his injury (including a description of his symptoms) as well as his medical history, which had included prior episodes of temporary pain and limping. While Plaintiff faults Hammer for not physically examining his knee, he does not explain how a physical examination might have changed Hammer's initial medical assessment or the course of his treatment, given the information that Plaintiff had provided.[4] Plaintiff also faults Hammer for not ordering an x-ray or an MRI, but nothing in the Third Amended Complaint suggests that Hammer had reason to believe, as of December 29, 2014, that a failure to immediately obtain diagnostic testing (as opposed to pursuing a conservative course of treatment) would pose an excessive risk to Plaintiff's health or safety. See Foye, 675 F. App'x at 215 ("Foye's disagreement about his course of treatment, namely, that an MRI or consult should have been ordered, does not demonstrate that the Medical Defendants were deliberately indifferent to his medical needs."). In fact, Plaintiff acknowledges receiving x-rays of both knees on January 26, 2015, ECF No. 121 ¶ 23, but he offers no averments concerning the results of this testing or how earlier testing would have impacted the course of his treatment. Plaintiff further acknowledges that, when he finally obtained the MRI following a conference before this Court, it revealed

---

[4] Notably, Plaintiff alleges that PA George physically examined his knee on January 16, 2015, after which she similarly diagnosed ligament damage. ECF No. 121 ¶ 23.

16

tendonitis for which no surgery was required. Id. ¶ 30. Ultimately, Plaintiff rehabilitated himself using the same treatment (physical strengthening exercises) that Hammer prescribed during his second visit.

In sum, while Plaintiff may disagree with the treatment that Hammer provided, his averments do not state a plausible claim for deliberate indifference to a serious medical need. See Monmouth Cty. Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 346 (3d Cir. 1987) (stating that "a mere disagreement as to the proper medical treatment" cannot support a claim of deliberate indifference). Even if Hammer could be considered negligent in assessing ligament strain instead of tendonitis, in failing to conduct a physical examination of Plaintiff's knee, in declining to order diagnostic tests, or in failing to initially provide ameliorative measures such as a knee brace, an ace wrap, or crutches, such malfeasance would be insufficient to state an Eighth Amendment violation. See Matthews v. Pa. Dep't of Corr., 613 F. App'x 163, 170 (3d Cir. 2015) ("Neither negligence nor medical malpractice is sufficient to state a claim for deliberate indifference.") (citing Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999)).

In arguing the viability of his claim, Plaintiff cites a decision from the United States Court of Appeals for the Seventh Circuit, Perez v. Fenoglio, 792 F.3d 768 (7th Cir. 2015). Therein, the court stated: that "a delay in treatment may constitute deliberate indifference if it exacerbates the inmate's injury or unnecessarily prolonged his pain[,]" and "[e]ven a few days' delay in addressing a severely painful but readily treatable condition suffices to state a claim of deliberate indifference." Perez, 792 F.3d at 781 (internal quotation marks and citations omitted). Drawing from these principles, Plaintiff suggests that Hammer turned a "blind eye" to his condition and caused him to later suffer a hernia.

17

This Court is not persuaded that the principles discussed in Perez support the existence of a plausible Eighth Amendment violation on the part of Hammer. In Perez, the plaintiff prisoner sustained a severe hand injury that involved a torn ligament in his right hand, dislocation of his thumb, tissue damage, and a gaping wound between his thumb and right index finger. Id. at 774. After examining the plaintiff, the prison physician recommended that he see an outside hand specialist, which would require approval by the prison's health care administrator. Id. Despite the objective seriousness of the plaintiff's condition, the health care administrator waited four days before issuing his approval, during which time the plaintiff "languished in pain and attempted to manage an open, bleeding wound." Id. By the time the plaintiff was seen at the hand specialist's office, his wound could no longer be sutured. Id. at 775. The four-day delay in approving outside treatment thus caused the plaintiff needless pain and suffering, along with a worsening of his condition. Id. at 781. The court ruled that these circumstances were sufficient to state a viable Eighth Amendment violation on the part of the health care administrator. Id. The court further ruled that an Eighth Amendment claim had been stated against a prison physician based on allegations that the plaintiff experienced a ten-month delay in receiving meaningful treatment while under the physician's care, the physician had ignored the hand specialist's treatment recommendations, and the plaintiff ultimately suffered irreparable damage to, and "decreased usage" of, his hand. Id. at 775-79.

In this case, Plaintiff has not alleged comparable facts showing that Hammer was deliberately indifferent to a serious medical need. Plaintiff does not contend that Hammer delayed Plaintiff's course of treatment; on the contrary, Plaintiff claims that he was injured in "late 2014," immediately signed up for sick call, and was seen by Hammer on December 29, 2014. ECF No. 121 ¶ 10. In response to Plaintiff's complaints of pain, Hammer prescribed

18

Ibuprofen and later cancelled the medication only after Plaintiff informed him that it was ineffective. There is no allegation that Hammer at any time disregarded the treatment recommendation of a physician or other specialist. And, although Plaintiff argues in his brief that "Hammer's failure to do anything about [his] condition did result in a hernia . . . [,]" ECF No. 141 at 4-5, there is no factual content in the Third Amended Complaint to support this speculative and conclusory assertion.

Based on the foregoing considerations, this Court is of the view that Plaintiff has not stated a viable Eighth Amendment violation on the part of Hammer.[5] Accordingly, it is respectfully recommended that the claims against him be dismissed.

### b. Defendant Correct Care Solutions, LLC

Plaintiff also asserts a § 1983 claim against Hammer's employer - CCS, a limited liability company that provided health care services to SCI-Pittsburgh under contract. ECF No. 121 ¶ 8. A private corporation providing health services to inmates may be liable under §1983 to the extent its policies or customs exhibit deliberate indifference to a prisoner's serious medical needs. Leflar v. Algarin, Civ. A. No. 16-6567, 2017 WL 1425835, at *4 (E.D. Pa. Apr. 19, 2017); Edwards v. Northampton Cty., Civ. A. No. 12-5323, 2016 WL 7654661, at *11 (E.D. Pa. Apr. 29, 2016), aff'd, 663 F. App'x 132 (3d Cir. 2016). A plaintiff must show that a relevant policy or custom cause the constitutional violation at issue. Natale, 318 F.3d at 583-84 ("In

---

[5] The Medical Defendants perceive that Plaintiff may be attempting to state a retaliation claim based on Plaintiff's parenthetical – and conclusory -- remark that Hammer denied him alternative pain medication "in retaliation . . . [for] the prison grievance [Plaintiff] filed on him." ECF No. 121 ¶ 27. As this Court previously observed in relation to the Second Amended Complaint, retaliation is not listed in the "Legal Claims" portion of the Complaint, and the Court does not believe such a claim is present in this case. ECF No. 119 at 9 n.5. Plaintiff also appears to implicitly disavow any retaliation claim in his brief in opposition to the pending motions. ECF No. 141 at 3 ("In this current civil action Plaintiff has filed for claims of Deliberate Indifference as well as pattern & practice of Deliberate Indifference.").

order for PHS to be liable, the [plaintiffs] must provide evidence that there was a relevant PHS policy or custom, and that the policy caused the constitutional violation they allege.").

In the absence of a predicate constitutional injury, however, there can be no liability on the part of CCS. Cessna v. Corr. Med. Servs., 794 F. Supp. 2d 544, 550 (D. Del. 2011)("The court has concluded that Dr. Wallace did not violate plaintiff's constitutional rights under the Eighth Amendment. CMS, therefore, cannot be liable based on the theory that it established or maintained an unconstitutional policy or custom responsible for violating plaintiff's rights.") (citing Goodrich v. Clinton Cty. Prison, 214 F. App'x 105, 113 (3d Cir. 2007)).

Here, Plaintiff has failed to assert facts that could plausibly establish a violation of his Eighth Amendment rights. For the reasons discussed, no claim has been stated against Hammer. Moreover, Plaintiff has not asserted that his other health care providers acted in a manner that was deliberately indifferent to his serious medical needs. In any event, however, Plaintiff's own allegations indicate that he was seen by medical staff on numerous occasions between December 2014 and August 2015. During the course of his treatment, Plaintiff was given two different types of pain medication, crutches, a knee brace, an ace wrap, x-rays, and physical therapy. As noticed, he complains that he did not receive a prompt MRI, but the results of the MRI did not indicate a need for surgery or any treatment regimen different from the one Plaintiff had received. Based on the facts alleged, Plaintiff has not demonstrated that prison medical personnel were deliberately indifferent to his serious medical needs. See Matthews, 613 F. App'x at 170 (prison medical officials were not deliberately indifferent to plaintiff's Achilles tendonitis, where complaint allegations showed that they saw him regularly, prescribed a cast and crutches, and advised him not to participate in certain physical activities during his recovery; to the extent they exposed him to greater risk of injury by refusing to recommend a cell

20

reassignment, their mistake involved only negligence, not deliberate indifference); Brandner v. First Corr. Medical, No. 05-3920, 167 F. App'x 328 (3d Cir. 2006)(per curiam)(plaintiff inmate who suffered from swollen and painful knee did not state Eighth Amendment claim against correctional medical center, medical director, or nursing supervisor where plaintiff had been seen by staff on approximately a monthly basis, medical staff provided pain medication and performed x-rays, plaintiff was given a cane, a post-complaint MRI showed that his knee was within "normal range," plaintiff had continued to receive medication and joint injections, and he had been referred to an orthopedic specialist).

Because no Eighth Amendment violation has been asserted, CCS cannot be liable under §1983. Accordingly, this Court respectfully recommends that the claims against CCS be dismissed.

### 2. The DOC Defendants

#### a. Defendant Capozza

Plaintiff's Eighth Amendment claim against Capozza is predicated on the theory that Capozza was aware of Plaintiff's medical condition but refused to do anything about it. Plaintiff claims that Capozza was made aware of his knee problems on several occasions: on January 13, 2015, Mr. Fish spoke to Capozza's assistant about Plaintiff and, later that same morning, Capozza stood in the officer's booth and watched Plaintiff limp past; on February 18, 2015, Plaintiff spoke to Capozza in person about his medical condition; the next day, he sent Capozza a request notice, which was forwarded to Defendant Wood; on March 9, 2015, Capozza denied Plaintiff's grievance appeal relative to his medical care; finally, on July 4, 2015, Plaintiff sent Capozza a request slip concerning rumors of retaliation and again expressed a need for additional

21

medical care. Plaintiff claims that, despite these notices, Capozza "intentionally refused to do anything but turn a blind [eye] & allowed it to continue . . . ." ECF No. 121 ¶ 50.

"[N]on-medical prison officials are generally justified in relying on the expertise and care of prison medical providers." Matthews, 613 F. App'x. at 170 (citing Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir. 2004)). Thus, "[i]f a prisoner is under the care of medical experts . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." Spruill, 372 F.3d at 236. "[A]bsent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official ... will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference." Id.

Here, Plaintiff's allegations establish that he was under continuous treatment by the prison's health care providers. For the reasons previously discussed, Plaintiff has failed to allege facts that could plausibly establish deliberate indifference on the part of medical staff members to Plaintiff's serious medical needs. It follows that Plaintiff cannot establish liability on the part of Capozza for failing to intervene in Plaintiff's treatment plan.

In addition, Plaintiff's claims against Capozza are deficient to the extent they are predicated on Capozza's receipt of request slips or his denial of Plaintiff's grievance appeal. As the DOC Defendants point out, the submission of a request slip is insufficient for purposes of establishing an official's personal involvement in the alleged wrongdoing. Enlow v. Beard, Civ. A. No. 11-856, 2013 WL 5332139, at *5 (W.D. Pa. Sept. 23, 2013) ("Plaintiff has not shown personal involvement on the part of the Defendants to whom he allegedly sent inmate request slips informing them of the inappropriate bunk transfer."); Hill v. Fisher, Civ. A. No. 10-00459, 2010 U.S. Dist. LEXIS 141855, at *26 (M.D. Pa. Nov. 10, 2010) (noting that submission of a

request slip about an incident does not raise a reasonable inference of personal involvement on the part of the defendant to whom the request slip is submitted).

Similarly, a prison official's participation in grievance processes, including appeals, fails to establish the requisite personal involvement. Brooks v. Beard, 167 F. App'x 923, 925 (3d Cir. 2006) ("Although the complaint alleges that [prison officials] responded inappropriately to [the plaintiff's] later-filed grievances about his medical treatment, these allegations do not establish [the prison officials'] involvement in the treatment itself."); Tarselli v. Harkleroad, Civ. A. No. 10-1266, 2012 WL 603219, at *5 (W.D. Pa. Feb. 23, 2012) ("[P]articipation in the after-the-fact review of a grievance or appeal is not enough to establish personal involvement.").

In sum, Plaintiff has failed to plead a plausible constitutional violation for which Capozza could be liable. Even if he had, neither Capozza's receipt of inmate request slips nor his participation in the grievance process would be sufficient to establish his own personal involvement in the alleged wrongdoing. And, because Capozza is a non-medical prison official, he was entitled to rely on the professional judgment of Plaintiff's health care providers. It is therefore recommended that the claim against Capozza be dismissed.

### b. Defendant Scire

Plaintiff's claim against Scire is premised on her appointment of Wood to investigate Plaintiff's January 13, 2015 grievance. According to Plaintiff, this constituted a violation of DOC administrative policy, because an official who is the subject of a grievance cannot investigate herself. ECF No. 121 ¶ 49. Plaintiff contends that Scire's actions caused additional delay in his medical treatment.

Plaintiff's averments fail to state a viable claim against Scire. To begin, "a violation of prison policy 'is insufficient by itself to support an argument for deliberate indifference [.]'"

23

Bracey v. Pa. Dep't of Corr., 571 F. App'x 75, 79 (3d Cir. 2014) (quoting Longoria v. Texas, 473 F.3d 586, 593 n. 9 (5th Cir. 2006)). Thus, Scire's alleged violation of the DOC's administrative policy does not, in and of itself, amount to a constitutional injury. In addition, as discussed, Plaintiff's averments concerning the Defendants' participation in the grievance process do not establish the requisite personal involvement for purposes of establishing §1983 liability. Thus, even if Plaintiff had alleged constitutionally inadequate medical care, he has not stated facts that would establish Scire's personal liability for the alleged wrongdoing. It is therefore respectfully recommended that the claims against Scire be dismissed.

### c.     Defendant Wood

Plaintiff's claims against Wood, like those against Capozza, are predicated on allegations that she was aware of his ongoing knee problem but refused to do anything about it. ECF No. 121 ¶ 48. According to the Third Amended Complaint, Wood was made aware of Plaintiff's condition in the following ways: (i) Plaintiff sent her a request slip on January 4, 2015 requesting an MRI, to which she did not respond; (ii) Wood investigated Plaintiff's January 13, 2015 grievance (in contravention of DOC policy) and ultimately denied it; (iii) after Plaintiff submitted a request slip to Capozza on February 19, 2015, concerning his perceived need for additional medical treatment, Capozza referred the matter to Wood; (iv) Plaintiff sent a similar request slip directly to Wood on February 28, 2015; (v) Plaintiff's mother and aunt both spoke to Wood and expressed concern about the treatment he was receiving; (vi) and Wood was present at the June 9, 2015 injunction hearing during which this Court ordered Defendants to arrange an MRI and a consult with a specialist. Plaintiff alleges that Wood "had actual knowledge of [his] condition, knew that it was an ongoing problem, & allowed it to continue[,]" despite being in a position of authority. Id. ¶ 48.

24

As the DOC Defendants point out, Corrections Health Care Administrators like Wood are administrators, not doctors. See Thomas v. Dragovich, 142 F. App'x 33, 39 (3d Cir. 2005). As such, Wood cannot be liable simply for failing to second-guess the medical judgment of Plaintiff's health care providers or for failing to dictate an alternative course of treatment. See Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993) (ruling that non-medical defendants "[could not] be considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor"); Judge v. Med. Dep't at S.C.I. Greene, Civ. A. No. 05-1776, 2007 WL 1576400, at *4 (W.D. Pa. May 31, 2007) ("The rule is that where a prisoner is being treated by a physician, a non-physician prison administrator can not be deemed deliberately indifferent simply because the lay administrator did not challenge the physician's care or respond directly to a prisoner's requests for more or different treatment.") (citing authority); Ascenzi v. Diaz, Civ. A. No. 05-1656, 2007 WL 1031516, at *5 (M.D. Pa. Mar. 30, 2007) (holding that prison's health care administrator lacked any medical authority to dictate the course of inmate's treatment and could not be considered deliberately indifferent for failing to second-guess the treating physician's assessment of the inmate's medical needs). "[A]bsent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference." Spruill, 372 F.3d at 236.

Here, Plaintiff is essentially complaining that Wood did not intervene to establish a different or better course of medical treatment for his injured knee. Although Plaintiff was clearly dissatisfied with his level of care, he has failed to allege facts showing that his course of treatment was constitutionally insufficient. Even he had pled constitutionally inadequate medical

25

care, Plaintiff has not alleged facts showing that Wood was in a position to challenge the medical judgment of Plaintiff's health care providers. Moreover, for the reasons previously discussed, Wood cannot be liable for her role in handling Plaintiff's January 13, 2015 grievance. In light of these pleading deficiencies, it is respectfully requested that Plaintiff's claim against Wood be dismissed.[6]

## E. FURTHER AMENDMENT

The United States Court of Appeals for the Third Circuit has stated that, in civil rights cases, *pro se* plaintiffs should generally be afforded an opportunity to amend a complaint before the complaint is dismissed in its entirety, Fletcher-Harlee Corp. v. Pote Concrete Contractors, 482 F.3d 247, 253 (3d Cir. 2007), unless granting further leave to amend would be inequitable or futile. Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002). The operative pleading in this case represents Plaintiff's fourth attempt to state claims relative to the medical treatment he received while incarcerated at SCI-Pittsburgh. For the reasons stated herein, he has failed to state claims that can withstand a Rule 12(b)(6) challenge. The instant litigation has been pending since March 2015. At this stage of the proceedings, it would be inequitable to allow further amendment, as this would result in additional delay and unfair prejudice to the Defendants. In addition, it appears unlikely that Plaintiff will be able to amend his claims in a

---

[6] As the DOC Defendants observed, Plaintiff makes reference in his Third Amended Complaint to an alleged conspiracy between Scire and Wood, which supposedly concerned Scire's decision to have Wood investigate Plaintiff's January 13, 2015, grievance. ECF No. 121 ¶¶ 20-21. However, Plaintiff does not include any conspiracy theory among his legal claims, id. ¶ 58, nor does he develop such a theory in his brief in opposition to the pending motions. Accordingly, this Court does not view the Third Amended Complaint as advancing such a theory. To the extent it does, this Court agrees with the DOC Defendants that the theory is insufficiently pled. ECF No. 126 at 7.

manner that would cure the deficiencies that this Court has identified.[7]  Accordingly, it is respectfully recommended that Plaintiff's claims be dismissed with prejudice.

## F.    CONCLUSION

For the foregoing reasons, it is respectfully recommended that the DOC Defendants' Motion to Dismiss Complaint, ECF No. 125, and the Motion of Defendants Correct Care Solutions, Inc. and Mark Hammer, PA to Dismiss the Third Amended Complaint, ECF No. 132, be granted.  It is further recommended that the Third Amended Complaint be dismissed with prejudice.

---

[7]  After Defendants filed the pending motions to dismiss, Plaintiff filed two separate "declarations," ECF Nos. 139 and 143, apart from his brief and response in opposition to the motions.  This Court has reviewed the declarations for the limited purpose of considering whether any information stated therein would support granting Plaintiff leave to further amend his Eighth Amendment claims.  After careful consideration, this Court concludes that nothing in the declarations provides support for further amendment of the Third Amended Complaint.

In general, Plaintiff's declarations discuss the events surrounding his hernia surgery, which was performed on March 3, 2017, as well as various acts of retaliation that Plaintiff claims to have endured as a result of filing this lawsuit and/or as a result of otherwise complaining about his treatment at SCI Pittsburgh.  Importantly, however, none of the Defendants named in this case are personally implicated in any actionable retaliation.  Plaintiff claims that he sent a request slip to Wood on January 9, 2017 asking when he would be getting his hernia surgery, and Wood never responded.  ECF No. 139 at 1.  This conduct, even if true, does not demonstrate Wood's personal involvement in a constitutional injury.  Rieco v. Moran, Civ. A. No. 14-0588, 2015 WL 1898140, at *6 (W.D. Pa. Apr. 24, 2015), aff'd, 633 F. App'x 76 (3d Cir. 2015) ("Sending a request slip to an individual is insufficient for purposes of establishing a Defendant's personal involvement in the alleged wrongdoing.").  Plaintiff also claims that he spoke to Hammer on January 20, 2017, for the limited purpose of asking when his surgery would occur.  ECF No. 139 at 3.  According to Plaintiff, Hammer "checked the computer" and told him it would happen "within the next 10 days."  Id.  Nothing about this incident suggests wrongdoing, much less constitutional injury.  Plaintiff next contends that, in February 2017, he submitted a grievance to Scire concerning alleged acts of retaliation on the part of Corrections Officer Hurt, who was in charge of inmate property.  Plaintiff claims he wrote to Scire several times to inform her that he had not received a stamped copy of his grievance, but never got an answer or a copy of the grievance until sometime after returning from his hernia surgery.  Id. at 3.  Again, nothing in this conduct suggests wrongdoing of constitutional proportions.  On March 9, 2017, Plaintiff filed a second grievance against Officer Hurt for alleged retaliation in connection to damage that was done to Plaintiff's television.  Id. at 8.  Plaintiff later appealed the denial of this grievance to Capozza, who affirmed the denial.  Id. at 9; ECF No. 143 at 5.  Capozza's involvement in the grievance process is insufficient to demonstrate his personal involvement in the alleged wrongdoing.  See Simonton v. Tennis, 437 F. App'x 60, 62 (3d Cir. 2011) ("[A] prison official's secondary review of an inmate's grievance or appeal is not sufficient to demonstrate the personal involvement required to establish the deprivation of a constitutional right.").

In sum, nothing that is set forth in the Plaintiff's declarations leads this Court to conclude that further amendment of the Third Amended Complaint would be fruitful or appropriate.  To the extent Plaintiff has actionable retaliation claims against any officials at SCI Pittsburgh, it is this Court's recommendation that Plaintiff be directed to pursue those claims, if he so desires, through separate litigation and after proper administrative exhaustion.

In accordance with the Magistrate Judges Act, 28 U.S.C. §636(b)(1), and Local Rule 72.D.2, the parties are permitted to file written objections in accordance with the schedule established in the docket entry reflecting the filing of this Report and Recommendation. Failure to timely file objections will waive the right to appeal. Brightwell v. Lehman, 637 F.3d 187, 193 n.7 (3d Cir. 2011). Any party opposing objections may file their response to the objections within fourteen (14) days thereafter in accordance with Local Civil Rule 72.D.2.

Dated: July 28, 2017

Respectfully submitted,

MAUREEN P. KELLY
CHIEF UNITED STATES MAGISTRATE JUDGE

cc:     The Honorable Joy Flowers Conti
        Chief United States District Judge

        Vern E. McGinnis, Jr.
        DG-2841
        SCI Forest
        P.O Box 945
        Marienville, PA 16239

        Counsel of record via CM-ECF